OPINION OF THE COURT
Steven W. Fisher, J.
The principal issue presented on this motion involves the options available to a prosecutor who believes that a Grand Jury has returned findings that are legally or factually inconsistent.
In the early morning hours of August 7, 1994, Robert McCargo was set upon and killed by a group of men outside the catering hall where he worked as a bouncer at 61st Street and Roosevelt Avenue in Queens. The Grand Jury investigating the matter heard from one eyewitness to the attack, and from two additional witnesses who reported statements allegedly made by the defendant relating to the incident.
The eyewitness testified that she saw the group of men first arguing with McCargo, and then physically assaulting him. According to the witness, McCargo was punched and kicked, and one man struck him on the head with a bottle. During the struggle, the witness saw four flashes and heard the sound of four gunshots.
A second civilian testified that, in a Manhattan holding cell, the defendant told him that he had been involved in a shooting incident at 61st Street and Roosevelt Avenue on August 7, 1994. According to the witness, the defendant expressed concern that he had left a fingerprint on one of the cartridges he had loaded into the weapon. The defendant explained that he had planned on doing the shooting himself but had ultimately prevailed upon a friend to do it with the weapon he supplied.
*316 The Grand Jury also heard from a detective who testified that the defendant made a statement to her following his arrest. He admitted having been at the catering hall, but insisted that he had done nothing more than smuggle some bullets into the premises, handing them to another person inside. The defendant said that a fight broke out between some guests and the bouncers, and that he heard shots as everyone ran from the scene.
Lastly, the Grand Jury received the findings of the Medical Examiner that McCargo had died as a result of "stab wounds of the back with injury to [the] left lung and gunshot wounds of [the] abdomen with perforations of [the] small bowel, colon and inferior vena cava.”
On this evidence, the prosecutor asked the Grand Jury to consider four charges: intentional murder, depraved indifference murder, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. As part of his legal instructions, the prosecutor explained the law of accessorial liability (see, Penal Law § 20.00).
The Grand Jury returned a true bill on both murder counts, but declined to indict the defendant on the weapons charges.
The prosecutor did not file the indictment, however. Instead, four days later, he returned to the same Grand Jury and reopened the case. He informed the jurors that, as their legal advisor, he believed their findings to be "inherently inconsistent based upon the evidence presented.” He explained:
"The People presented evidence to the Grand Jury, which, if determined to be credible evidence by the Grand Jury, alleged that the defendant possessed a loaded gun which he gave to a second individual for purposes of shooting Robert McCargo and thereafter the victim was shot and killed.
"Based upon this evidence, it is inconsistent for the Grand Jury to find that there was sufficient evidence to indict the defendant, acting in concert with other persons, on both theories of Murder in the Second Degree, but insufficient evidence to indict the defendant, acting in concert with other persons, on charges of Criminal Possession of a Weapon in the Second and Third Degrees.”
"[I]n an effort to reconcile this inherent inconsistency,” the prosecutor offered to have the entire case read back, and to recharge the jurors on the law in order to allow them to "vote upon the charges * * * anew.” The jurors agreed, and the prosecutor vacated the first vote, had the full transcript of the *317 proceeding read back, and recharged the Grand Jury on the law.
Once again, the four original charges were submitted for consideration. This time the Grand Jury returned a true bill on all four counts, and that finding was presented to the court in the instant indictment.
The defendant now moves to dismiss. His motion should be granted.
When a trial jury returns a "legally defective” verdict, "the court must explain the defect or error and must direct the jury to reconsider such verdict, to resume its deliberations for such purpose, and to render a proper verdict.” (CPL 310.50 [2].) A repugnant verdict that makes the jury’s intention with respect to individual counts unclear is "legally defective” and must be resubmitted by the Trial Judge (cf., People v Tucker, 55 NY2d 1; People v Robinson, 45 NY2d 448).
But the responsibility and power of the District Attorney before a Grand Jury is not the equivalent of that of a Judge at trial. Although sharing with the court the responsibility of being legal advisor to the Grand Jury (see, CPL 190.25 [6]), the District Attorney remains in large measure an advocate from whose excessive domination the Grand Jury process must be insulated (cf., People v Wilkins, 68 NY2d 269, 273; People v Di Falco, 44 NY2d 482, 487).
With that in mind, the Legislature has provided that, once a charge has been presented for consideration and rejected by a Grand Jury, it may not again be submitted to any Grand Jury "unless the court in its discretion authorizes or directs the [P]eople to resubmit such charge to the same or another grand jury” (CPL 190.75 [3]). The purpose of this statutory limitation was "to prevent abuses by prosecutors who, at common law, were free to resubmit matters to the Grand Jury repeatedly and without any court supervision” (People v Dykes, 86 AD2d 191, 194; see also, People v Martin, 71 AD2d 928, 929).
Consequently, even if a prosecutor correctly concludes that a Grand Jury’s dismissal of certain charges is inconsistent with, or repugnant to, its findings on other counts, she may not resubmit the dismissed counts without court authorization. It is for the court, and not the District Attorney, to determine whether a repugnancy exists and, if so, whether that repugnancy warrants resubmission (cf., People v Dykes, supra, at 195).
In the case at bar, because the rejected weapons charges *318 were resubmitted without the required court authorization, they must be dismissed (People v Wilkins, supra).
The People maintain, however, that no court authorization was necessary for resubmission of the murder counts and therefore those counts should stand. It is certainly true that, unlike dismissed counts, charges found by a Grand Jury may be resubmitted by the District Attorney to the same or another Grand Jury without the permission of the court (see, e.g., People v Cade, 74 NY2d 410). Nevertheless, in the instant case, the integrity of the Grand Jury proceeding at which the murder counts were resubmitted was seriously compromised.
In explaining his reason for reopening the case, the prosecutor told the grand jurors that their earlier finding was "inherently inconsistent”, implying that it was therefore legally unacceptable. In this, he was incorrect both on the facts and the law.
Verdicts are defective for repugnancy when they represent different findings on the same element. Thus, when a not guilty verdict conclusively negates an essential element of a crime upon which a guilty verdict is returned, the verdicts are repugnant and legally defective (see, People v Tucker, 55 NY2d 1, supra).
The possession of a loaded and operable firearm is not an element of either intentional or depraved indifference murder. Hence, in the trial context, an acquittal on weapons possession is not repugnant to a conviction for murder (see, e.g., People v Fuller, 200 AD2d 498; People v Coleman, 199 AD2d 330; cf., People v Rivera, 77 AD2d 538). Similarly, a Grand Jury’s dismissal of weapons charges cannot be deemed repugnant to its return of a true bill on murder, and the prosecutor’s suggestion to the contrary was plainly erroneous.
Moreover, the Grand Jury’s initial findings were not necessarily inconsistent when viewed in light of the evidence presented. The grand jurors, as finders of fact, were free to accept or reject testimony as they saw fit, and were not bound to choose between accepting a witness’s testimony in full or rejecting it in its entirety. Considering the Medical Examiner’s conclusion that the deceased had died of both stab wounds and gunshots, the Grand Jury could well have accepted testimony establishing the defendant’s presence at the scene and his participation in the fatal attack, while rejecting testimony offered to prove his connection to the gun or its use.
Nevertheless, the prosecutor incorrectly advised the grand *319 jurors that, as a matter of law, they could not make such a finding. This erroneous instruction impermissibly invaded the exclusive province of the grand jurors to determine the facts, and created "an unacceptably high risk that they might misconstrue or undervalue their own role in reviewing the evidence, or even assume that the defendant should be indicted [on the weapons charges]” (People v Batashure, 75 NY2d 306, 310).
I conclude, therefore, that the prosecutor’s comments substantially impaired the integrity of the Grand Jury proceeding and warrant dismissal of the indictment (see, People v Batashure, supra; CPL 210.35 [5]).
Accordingly, the defendant’s motion to dismiss the indictment should be granted. In view of the unusual nature of the circumstances, however, the People should also be granted leave to re-present all four charges to a new Grand Jury.